HENRY L. LEVY, Plaintiff, *against* WILLIAM H. TERWILLIGER, Defendant.

(Decided April 4th, 1881.)

The complaint in an action to recover back money paid to the defendant, alleged that the defendant falsely represented to D., with whom the plaintiff had on deposit money to pay for purchases of merchandise, that the plaintiff had purchased of defendant an iron safe at the price of $150, and that D., believing the representations to be true, by mistake of fact, paid that sum to the defendant on said representations. The evidence on the part of the plaintiff was that the plaintiff went to the place of business of the defendant, a dealer in safes, named Terwilliger, and after looking at a safe for which $165 was asked, requested the defendant's salesman to ascertain the rates of freight to Austin, Texas, where he wished to ship the safe, if purchased, and to send the rates to the place of business of D.; giving to the salesman a card with the names of the plaintiff and D. and the latter's address written on it by himself. Later, on the same day, the plaintiff went to the place of business of another dealer in safes, in the same street, having the same general name —"Terwilliger & Co."—and there bought a safe for $150, directing the bill *to be sent to* D. He then went to D., and told him "when Terwilliger sends bill of $150 for safe, pay the same." The next day the defendant's salesman called on D., showed him the card written by the plaintiff, with the amounts $20 and $150 written on it, and spoke to him about the rates of freight, and was told by D., that it was all right, that the plaintiff had given him orders, providing a bill of lading came from Terwilliger, to pay $150 for the safe. Thereupon the salesman shipped the safe by steamer to the plaintiff at Austin, Texas, and the following day brought the bill of lading therefor to D., who then paid him $150 for the plaintiff, upon which D. claimed and received for himself 5 per cent. as

discount. The plaintiff, two days later, on discovering that the money was paid to the defendant instead of to Terwilliger & Co., demanded the return of it from the defendant, which was refused. D. subsequently assigned all his claims against the defendant to the plaintiff. *Held,* that even if the plaintiff could, under the circumstances, have any remedy against the defendant, the safe having been shipped to him and paid for in consequence of his own acts and negligence, he had at least failed to prove the cause of action set forth in his complaint, and a verdict was properly directed for the defendant.

EXCEPTIONS taken by the plaintiff at a trial term of this court ordered to be heard in the first instance at the general term.

The facts are stated in the opinion.

*Edward Van Ness,* for plaintiff.

*Geo. E. Horne* and *Thomas Darlington,* for defendant.

CHARLES P. DALY, Chief Justice.—There could be no recovery by the plaintiff against the defendant, upon the facts in this case. The evidence shows that the plaintiff went to the defendant William H. Terwilliger's store, in Maiden Lane, and looked at an iron safe, for which the defendant asked $165. The plaintiff said that he had a long way to ship it. The defendant asked where, and the plaintiff said, to Austin, in Texas; upon which the defendant said he would go out and get the rates. The plaintiff told him he could do so, and to send them to him at 6 Beekman street; giving the defendant's salesman, Howard, a card, with this written upon it, partly in pencil: " H. L. Levy, Austin, 6 & 8 Beekman street. N. Doll."

The plaintiff testified that the price asked was $165; the defendant and the defendant's salesman, Howard, that that was the price first asked, but that it was agreed that the price should be reduced to $150, which the plaintiff denied. Afterwards, the plaintiff went to another dealer in safes, who had his place of business also in Maiden Lane, and who had the same general name, Terwilliger & Co., where he saw a safe, which Terwilliger & Co. asked $180 for, but which they finally

agreed to sell and the plaintiff to buy, for $150; and the plaintiff told them to send the bill to N. Doll, 6 Beekman street. The plaintiff then went to N. Doll's, with whom he had deposited money to pay his bills, and told him, as he testifies: "When Terwilliger sends bill of $150 for safe, pay the same." And Doll's testimony is, that the plaintiff told him that he had bought a safe of Terwilliger, and if Terwilliger brought a bill of lading, that he, Doll, should pay him $150. The next morning, Howard, the defendant's salesman, called upon Doll and showed him the card before referred to, which contained, in addition to what the plaintiff had put on it, the figures $20 and $150. Doll, upon seeing the card, told Howard that it was all right; that the plaintiff had given him orders, providing a bill of lading came from Terwilliger, to pay $150 for the safe, and told him that if he brought him the bill of lading he would give him a check. Howard then went and shipped the safe on a steamer for Austin, in Texas; and having done so, upon the next day, he brought the bill of lading and a receipted bill for $150 to Doll. Doll then said: "I suppose you will give me 5 per cent. discount if I give you a check," and Howard said yes; upon which Doll gave him a check for $150 for Terwilliger, which was paid, Doll receiving from Terwilliger the discount for himself.

Doll was asked if Howard showed him any rate of prices for freight, and answered that he believed he said something about rates, after he, Doll, had said it was all right, upon the first interview; that when he showed him the card, he said nothing about rates, but that he, Howard and Terwilliger were at the office a little time before, and that Howard mentioned something about rates to give to him next morning; that he believed he showed him some figures on a card, but that he could not remember what Howard said. Afterwards Doll testified that Howard told him simply that he had the rates.

This is the transaction as stated by the plaintiff and Doll; Howard and the defendant giving a different account of it; and one that would clearly show that the defendant was under no obligation to return the purchase money; but the correct-

ness of the decision of the court below, as the court gave judg-
ment for the defendant, without submitting the case to a jury,
must rest solely upon the testimony offered by the plaintiff.
It must appear, as matter of law, that the defendant was enti-
tled to judgment, assuming the transaction to have been as
detailed by the plaintiff's witnesses.

When the plaintiff returned and discovered the mistake
that had been made, Doll attempted to stop the payment of
the check, but was not successful. He and the plaintiff then
went to the defendant's store. The plaintiff asked him if he
had bought a safe at his house, and the defendant said no. The
plaintiff then asked him upon what order he shipped the safe
to him, and the defendant said that Mr. Doll gave him the
order and that he shipped it. The plaintiff then asked what
safe he had shipped, and the defendant showed him one, as
the plaintiff testified, " near like the one he shipped." The
plaintiff then demanded the return of the money, which the
defendant refused, as the safe had been shipped. The plaint-
iff and Doll went again to the defendant's on the following
day, and asked him how he could ship a safe to him that he
asked $165 for at $150, without his knowledge, and the
defendant answered : " If I am not mistaken, I came down
$15, and if you would have pressed, I would have sold you the
safe for $145, or even less;" and that the defendant, at least,
understood that the price of the safe was to be $150, appears by
the figures $150 on the card, which was shown by Howard to
Doll, on the first interview. It further appears, that whatever
right Doll might have to recover back the money from the
defendant, he has by assignment transferred to the plaintiff.

The result of the state of facts, as above narrated, is that
the defendant delivered the safe on board a steamer for Texas,
addressed to the plaintiff at Austin, and procured a bill of
lading therefor, which he delivered to the person to whom he
was directed by the plaintiff to send the rates of transporta-
tion, and by whom the defendant's agent, Howard, was told,
when he called, that it was all right, to get the bill of lading
and bring it to him with a receipted bill for $150, and he
would pay it ; which he did, when the bill of lading and the

receipted bill were brought to him.  I fail to see why, on this state of facts, the plaintiff is entitled to recover from the defendant the money paid for the safe by the plaintiff's agent. It was through his own act that the defendant's safe was shipped to him and paid for. If he has any remedy in such a case against any one, which I very much doubt, it is, in my opinion, not against the defendant. When he, after what occurred at the defendant's store, concluded to buy the safe shown him by Terwilliger & Co., it was an easy matter for him to go again into the defendant's, T. W. Terwilliger's store, and inform him that he need not send the rates of transportation, as he had bought a safe elsewhere. Both establishments were in the same street. He knew that both had the same name, as he had been in both stores ; knowing this, he not only left the defendant to ascertain and bring to his agent the rates of transportation, which, on the defendant's part, was then unnecessary, the plaintiff having concluded to buy a safe from the other Terwilliger; but he took no precaution to guard against the possibility of mistake from the fact that there were two venders of the same article, of the same name, and in the same street, by instructing his agent that he was to pay for a safe to be sent by Terwilliger & Co. ; and if any one came with his card, from the defendant, with the rates, to inform him that he had bought a safe elsewhere. All, however, that he did, according to his own testimony, was to say to his agent : " When *Terwilliger* sends bill of $150 for safe, pay the same ;" without distinguishing between the two Terwilligers, and leaving his agent liable to make the mistake that he did, by supposing that the person who came to him in the name of Terwilliger, with the defendant's card, was the one with whom he was to close the transaction. It was by the plaintiff's own negligence, therefore, that both his agent and the defendant were led to ship the safe, that a bill of lading for it was obtained, delivered to his agent, the purchase money paid by the agent, and a receipt given for the payment of it. As the safe was delivered on board of a steamer for Texas, to be brought there as a part of the cargo, it does not follow, that two days afterwards, the defendant could go to the steamer and get it

re-delivered to him.  Cargo is stowed as it is received, and where a coast steamer is taking in cargo at this port, for Texas, an article of merchandise may, in a very short time, be so covered up by what is subsequently received, as to make it troublesome and expensive to overhaul what is stowed over it, so as to get the article out of the vessel again.   Those in charge of the vessel would be under no obligation to get it out again, at their own cost or expense, and might reasonably require that whatever expense it involved, should be borne by those who wanted it taken out.  If the safe, after the plaintiff discovered the mistake that had been made, could be obtained and restored to the defendant, it was the plaintiff's duty to see that it was done, and to bear any expense incident to doing it, as it was through his act and negligence that the safe was shipped to him and paid for.

The rule laid down by Lord MANSFIELD in *Price* v. *Neal* (3 Burr. 1354), and approved in *Franklin Bank* v. *Raymond* (3 Wend. 74), is, that money paid by mistake or ignorance of the facts can never be recovered, unless it is against conscience to retain it.   It certainly is not against conscience that the defendant should, in this case, retain the price paid to him after having parted with the safe, when the plaintiff, through whose act and negligence it was shipped, has never made any effort to get it from the vessel and restore it to the defendant; but without doing or offering to do anything to repair what he himself brought about, asks the court to compel the defendant to restore to him the $150. The cause of action, as averred in the complaint, is that the defendant falsely represented to Doll that the plaintiff had purchased the safe, and that Doll, supposing and believing that representation to be true, and having no knowledge to the contrary thereof, by mistake of fact, paid $150 to the defendant on that representation.  It is, I think, sufficient to say, that no such cause of action as is here set forth has been proved by the plaintiff, and that the judgment given for the defendant should be affirmed.

J. F. DALY and VAN HOESEN, JJ., concurred.

Exceptions overruled, with costs.